With that, we will go to the first case on the calendar, and that's the SEC v. Contillai, if I'm pronouncing that right. Yes, Your Honor, good morning. Good morning. Just give us one second, Mr. Lambert. Is it Lambert or Lambert? How do you pronounce your name? This is Lambert, George Lambert. Okay. So, Mr. Lambert, you have reserved three minutes for rebuttal. That gives you seven minutes out of the gate. And if you just give me one second to set this up. The floor is yours. You may proceed. Thank you, Your Honor. May it please the Court. When I ask a preliminary question, that means you must be sure you have public jurisdiction. There are still claims pending, right? There are intervenor claims pending? Yes, Your Honor, but those are the intervenor's claims, so those are separate. Is there a final judgment as to all parties and all claims? No, Your Honor, there is no judgment.  Thank you.                 What's the basis for appellate jurisdiction? The basis for appellate jurisdiction is the judgment dated March the 14th, 2025. My question is, it's labeled a final judgment, but if there are still claims pending in the case, is it in fact a final, appealable judgment? That's my question. Your Honor, you are absolutely right. There are pending claims. The claims belong to the intervenors, and this is the point which Your Honor astutely made, and it's up to this Honorable Court to decide whether it has jurisdiction or should it wait for the adjudication of the intervenor's claims. Well, I guess that's the question. It wasn't clear to me whether the intervenors are just challenging the execution on the judgment, on the disgorgement. In other words, that there's disgorgement of properties, and they're saying they have a claim to some of those properties, and that they should take before the SEC takes. Does that affect whether this is a final judgment or not? Yes, Your Honor, this is very sharp and correct point. There is an outstanding asset of Collector's Coffee in Nevada Corporation, which is the Jackie Robinson contracts, which were evaluated at one point by Christie's for $25 million. This is by far the greatest asset of Collector's Coffee, and there is a dispute regarding that asset. We are talking about the legendary baseball player who concluded two famous contracts and broke the color barrier in 2040s. The first one was in 1945. The next one was 1946, excuse me, 47, and that was the first ever case that when a baseball player was admitted into the prime league in the United States. There's an injunction in the judgment. Are you appealing from the injunction in any respect? Or are you just appealing the monetary penalty? We are appealing, Your Honor, primarily on the basis of a jacuzzi case, June 2024. I understand, but you can bring an interlocutory appeal from the granting of an injunction, and I'm asking whether that might be the basis for a public jurisdiction, but a related question is whether you are challenging the injunction in any way. Your Honor, this particular appeal concerns only the judgment of March the 14th, 2000. You're not challenging the issuance of the injunction? Yeah, it's within the four corners of the judgment. It's a 10-page judgment, and the ruling is approximately 74 pages. And of course, Your Honor would be the one to decide whether this is sufficient to go ahead with this appeal. At least in order to preserve the standing of my clients, the talents, Collector's Coffee, Innovative Corporation, which is the title holder of the Jackie Robinson contracts, and the rights of Michele Cantile, who, by the way, I should update you, Your Honor, since the last time you heard this case, he has been released. He is a free citizen subject to the probation obligations. Michele Cantile was convicted only to 51 months of low-security imprisonment. On one count of the 24th, the government dismissed 23 counts. That was a plea agreement, right? That was a deal that he made? Yes. He wasn't acquitted of anything? Yes. Okay. But I think we still haven't heard an answer to Judge Chin's question, which is, do you have any appellate arguments or any challenge pending to the injunctive relief that the district court granted? Or are you only challenging... It seemed to me that your arguments went mostly to the financial remedies that were imposed. Well, it's all intertwined. Our challenge is based on the Jarkissi case, the 27th of June, 2002. Yes, but of course, the injunctive relief, it's not clear to me how that would be affected by Jarkissi. Because that's an equitable matter. Generally speaking, there is no right to a jury trial for anybody under any circumstances in a suit for an injunction. Yes, but the judgment is for $72.6 million. Yes, we understand that. The question is, are you challenging the injunction? Yes or no? I would think it's a part of this appeal that whatever is within the ruling of the court, 74 pages plus the 10 pages of the judgment, yes, we are appealing everything. Okay. May I proceed, Your Honor? Yes. As I mentioned, this appeal rests on two cases of the U.S. Supreme Court. Number one is Jarkissi, the milestone case, which has breached the rights of the U.S. Securities and Exchange Commission to have the claims adjudicated in chambers in our reading of that case. So that's the major concern. The jury trial took place before the Jarkissi case was issued by the U.S. Supreme Court. But nonetheless, the court had the full right to recognize the case law for the Jarkissi and go for a new trial. Because the first trial was without any numbers. The first trial was what? Without any numbers, without any dollar amounts. So the point we are making is that this case should be remanded for trial before a jury because there was no opportunity for any jury to consider the amounts, to enter any amounts. Yes. What do you do with the United States against Tal? Yes. We quote from the case. It's consistent with Tal. We quote in the opening brief from Tal. But our reading of the Jarkissi case law is that it would be improper to have the judgment issued in chambers. And by the way, there was an extraordinary hike in the amount. The criminal case established the liability to the investors for 6.1. Yes. So do you think that we can overrule the Supreme Court's decision in Tal or declare that the Jarkissi case in effect overruled Tal? Is that the position? No, no, no. Of course not. But Tal says it is precisely contrary to your argument. Tal says you are entitled to a jury trial in one of these administrative matters but only with respect to liability, yes or no. Not with respect to the remedies which are for the court to decide. And Jarkissi relies on Tal solidly. It never says anything at all about that case was wrongly decided or that case doesn't apply to the SEC or anything at all that would cast doubt on it. So I'm wondering why you think we have the authority to disregard that Supreme Court precedent. Yes. We cited Tal on page 4, Tal 481 U.S. at 422. But our position is about the spirit of the rulings in Jarkissi. And our reading is that... Is this scorching an inequitable remedy? Is this scorching an inequitable remedy? Yes. We believe it is, but not the penalties. Then shouldn't that be an issue for the court and not the jury? Yes, but not the penalties. Because Jarkissi said that penalties belongs to... In my opinion, it belongs to the jury. We relied on the spirit of the adjudication in Jarkissi that it belongs to the jury. I need to yield to my colleague. All right. You've reserved three minutes for rebuttal. I want to hear from Ms. Parisi, or is it True Parisi? You use both names? True is my middle name, so Ms. Parisi is my middle name. Ms. Parisi. All right. Ms. Parisi. May it please the court, Emily True Parisi for the Securities and Exchange Commission. I'd like to address Judge Chin's question about appellate jurisdiction. That was briefed earlier in this appeal. There was... Appellants made a stay motion. I believe it was phrased in the alternative stay or an extension to allow the intervener claims to play out. The commission opposed that, stating case law saying that because the only issues left were a collections issue, the only issues left are where the proceeds from the contracts will go once collections have been made. That does not deprive the court, the judgment of the finality. And the court, I believe, agreed, at least implicitly, and denied the stay, denied the request, and allowed the briefing to go forward. When did the interveners come in? After the disgorgement award was ordered? I believe they've been in the district court case since before then. But there has been a settlement in principle reached, I believe, if you look at the district court docket. And it's just to be executed once appellate matters are resolved. But again, it's a framework for a settlement. That's what the status reports to the district court say, in terms of where the proceeds will go. But it has nothing to do with the underlying merits of the case. And so our position before, and still is, is that there is appellate jurisdiction here. For your honors. As to the merits of the appeal itself, we believe that Tull is dispositive of the jarcossy issue. This court has already addressed that argument in the SECB Halitron case that we cite in our brief, which raises the exact jarcossy argument that appellants make here. And we believe that the district court here carefully applied this court's precedence in entering remedies. Here, did not abuse his discretion. And I'm happy to answer any questions your honors have about the merits of this case. But otherwise, we would ask the court affirm. All right. Mr. Lambert, back to you. Thank you, your honor. Thank you, Ms. Parisi. Yes, your honor. Regarding the appellate jurisdiction, our position is to defer to the panel. Because there are issues. It's not about collections. One of the issues is that the corporate asset, if it were indeed valued $25 million, would be dispositive because there would be no loss to the investors. That would take care of any claims of the investors. If only the appellants were able to sell the contracts, which is in the marshal's office right now, U.S. marshal's office has the custody of those documents. If it were allowed to sell it with a certain promotional campaign, it could fetch the loss of the investors. So we believe, as I mentioned before, it's intertwined because the corporation did have assets. An extraordinary amount of assets. And by the way, the executive contracts, it's not only commercial value. I'm puzzled. So it seems to me that now you're challenging your own jurisdiction. You're challenging whether there's jurisdiction to hear the appeal that you brought. Well, we are leaving it up to the court. Well, we have to decide, of course, for ourselves. But you asserted appellate jurisdiction as an interlocutory appeal, right? You cited 28 U.S.C. 1292. Yes, Your Honor, just to preserve the rights of my clients. If we didn't do that, then the SEC would argue that you have forfeited your right to appeal from the judgment. Right, but you didn't get the district court to approve this. And so that's 1292B. You didn't do that. And it doesn't seem like you're simply appealing a preliminary injunction or something that gives you an automatic right to appeal. So that's why I think it's puzzling to know why you think you even have the right to be here. Your Honor, just out of precaution. If your owners decide that the asserting jurisdiction is premature, we will definitely defer to your opinion. But my point is, though, that the intervener's action seeking the jacket of the contract is intertwined with the main case because if the appellants were allowed to sell the contracts and leave the proceeds in the escrow account, then they would pay off all the investors. The main case would be different. They were just not allowed. Was the question of the valuation of these contracts at issue in the jury trial? Yes, it was. I thought that in the jury trial, the SEC argued that the value of these contracts had been misrepresented. And that was one of the misrepresentations that they argued was fraudulent. Am I mistaken about that? Thank you, Your Honor. The valuation was on the letterhead of Christy's auction. That was my client's. It's not my job to figure out what these contracts actually are worth. My question is, am I wrong to think that at the jury trial, one of the things that the SEC said was part of the fraud was in misrepresenting the value of these contracts and the jury found against you? So I'm wondering why we should think that actually they're worth a fortune and enough to pay back all the losses of all the parties. Your Honor, there is also an expert report and an expert who testified that in the maximum... Yeah, but apparently the jury didn't believe that, right? The jury decided that your client was a con man and had committed fraud. Was there any separate verdict that said, well, he was fraudulent about some things but not about the Jackie Robinson contracts? There was nothing in the special verdict to ask about the Jackie Robinson contracts. There was no special verdict requested, right? Yeah, it didn't about the Jackie Robinson contracts. And there was an expert opinion that the value could go up to $36 million. That was an independent expert. And that's the heart of this case. Were the appellants allowed to sell those contracts on the free market using the auction mechanism, then everybody would be whole. I mean, all the investors would be whole. That's why I'm saying that it's intertwined. The intervener's action claiming the rights to the contract was and is intertwined with the main case. And the interveners are investors in the company, or who are they? Yeah, they were investors in the company. They loaned some money against the collateral of the Jackie Robinson contracts. Okay, I understand. Thank you. And the last sentence, if I may. The owners of the Jackie Robinson contracts, which are the heart of this case, those belong to the American history. They belong, actually, in my opinion, to the National Museum of African American Culture and History in Washington, D.C. They should be installed there. So this is a very important case. The contracts are out there. And we seek your attention to this special circumstance that it should resolve also the destiny of those contracts. Thank you, Your Honors. All right, thank you both. We will reserve decision. As I mentioned, we'll take a short adjournment now, and then we'll come back in maybe 10 minutes or so to resume the arguments on today's calendar. Thank you.